# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RICHARD LATORTUE, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. N18C-12-219 MAA |
| | ) | |
| v. | ) | |
| | ) | |
| THE STANDARD FIRE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: May 19, 2020
Decided: July 2, 2020

*Upon Defendant The Standard Fire Insurance Company's*
*Motion to Enforce Settlement Agreement:*
***Granted***

## MEMORANDUM OPINION

A. Dale Bowers, , Esq., LAW OFFICE OF A. DALE BOWERS, P.A., Wilmington, Delaware, *Attorney for Plaintiff*.

Armand J. Della Porta, Jr. Esq., MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, Wilmington, Delaware, *Attorney for Defendant*.

**Adams, J.**

Pending before the Court is Defendant The Standard Fire Insurance Company's Motion to Enforce Settlement Agreement (the "Motion to Enforce"). The Court held oral argument on May 14, 2020. After oral argument, the Court provided the parties time to attempt to resolve the matter before the Court issued this Order. On May 19, 2020, counsel for Defendant submitted a letter to the Court representing that the parties had not reached an agreement to resolve the Motion. This matter is therefore ripe for a decision by the Court. For the reasons stated herein, the Court grants Defendant's Motion to Enforce Settlement Agreement.

**Background**

Plaintiff Richard Latortue entered into mediation with Defendant on March 11, 2020. Both parties subsequently signed a Settlement Agreement, which stated:

> "In exchange for an executed General Release and Stipulation of Dismissal of all claims with prejudice, the defendants will pay the plaintiff $15,000. All parties have entered into this agreement by their own volition and understand the terms of the settlement. This document was reviewed by the parties before execution."

Following the signing of this agreement, Defendant drafted a General Release and Plaintiff submitted suggested edits to Defendant.

Defendant argues that the parties have a valid, enforceable settlement agreement and that the language contained in the General Release draft is standard practice. Plaintiff argues that the agreement is unenforceable because the parties

2

cannot agree on the admission of liability provision and other specific language contained in the parties' General Release drafts.

**Analysis**

"Delaware courts encourage negotiated resolutions to contested cases, and, for that reason, among many others, settlement agreements are enforceable as contracts."[1] Defendant, as the party seeking to enforce the settlement agreement, has the burden of proving the agreement's existence by a preponderance of the evidence.[2] Defendant must prove: "(1) the intent of the parties to be bound by it; (2) sufficiently definite terms; and (3) consideration."[3] "Intent to be bound is based on the 'objective manifestations of assent and the surrounding circumstances,' not 'subjective intent.'"[4]

The signatures of the parties on the March 11 settlement agreement form indicate the intent of the parties to be bound by the agreement. Consideration for the agreement was also provided, as the parties agreed to resolve the matter without litigation in exchange for a $15,000 settlement payment.

---

[1] *Spacht v. Cahall*, 2016 WL 6298836, at *2 (Del. Super. Oct. 27, 2016) (citing *Schwartz v. Chase*, 2010 WL 2601608, at *4 (Del. Ch. June 29, 2010); *Asten, Inc. v. Wanger Systems Corp.*, 1999 WL 803965, at *1 (Del. Ch. Sept. 23, 1999)).
[2] *Stone Creek Customs Kitchens & Design v. Vincent*, 2016 WL 7048784, at *3 (Del. Super. Dec. 2, 2016) (citing *Spacht*, 2016 WL 6298836, at *2).
[3] *Stone Creek Kitchen & Design*, at *3 (citing *Sheets v. Quality Assured, Inc.*, 2014 WL 4941983, at *2 (Del. Super. Sept. 30, 2014)).
[4] *Id.*

Plaintiff's argument against enforcing the settlement is based on Plaintiff's disagreement with certain language Defendant included in its draft of the General Release. Plaintiff submitted an edited version of the General Release draft to Defendant, indicating his desire to include a provision stating that Defendant admitted liability in making the $15,000 settlement payment and a statement that "the Releasee acknowledges and admits that this claim was improperly handled and the denial was based on a report from an Engineer which lacked any foundation."

Plaintiff also discussed in his Opposition to the Motion to Enforce and at oral argument his disagreement with Defendant's inclusion of "executors, administrators, successors, agents, insurance carriers, assigns, past and present affiliates, parent companies, subsidiaries, predecessors, successors, directors, officers, employees, stockholders, agents, servants, and attorneys" in the Release. When Plaintiff originally provided edits to Defendant regarding this draft, however, no change was made to this provision. Further, the General Release serves to resolve "the matters alleged in the Civil Action." This language, which Plaintiff does not appear to take issue with, would bar Plaintiff from pursuing claims for the allegations in this case against the individuals listed, regardless of whether the individuals were expressly included in the Release.

With regard to the admission of liability provision, counsel for both parties represented at oral argument that neither had ever been involved with settlement

4

agreements in which a party admitted liability. As Plaintiff's counsel explained at oral argument, when parties enter into a settlement agreement, it is usually presumed that parties to a settlement agreement do not admit liability. The admission of liability was not discussed at the March 11 mediation.

The possibility of a confidentiality clause was raised by Defendant at mediation. As a part of the settlement negotiations, Plaintiff agreed to accept a lower settlement payment in exchange for the exclusion of a confidentiality clause from the agreement. Plaintiff could have raised the issue of admission of liability during these negotiations, but did not. Additionally, Plaintiff's argument regarding the perceived inadequacy of the settlement payment does not serve as a basis for finding the agreement unenforceable. Plaintiff chose to accept this payment amount in exchange for resolving his claims without litigation.

The parties are bound by a valid, enforceable settlement agreement containing the material terms—a payment of $15,000 in exchange for a General Release and Stipulation of Dismissal. The form signed by the parties at mediation is standard and familiar to counsel for both parties. The language contained in Defendant's draft of the General Release is also standard practice. Based on Plaintiff's voluntary signature of the settlement agreement and the surrounding circumstances of the settlement negotiations and mediation, Plaintiff objectively intended to be bound by

5

the terms of the agreement, including the terms of the General Release as indicated in the settlement agreement drafted by Defendant.

Plaintiff's desire for a "win" over Defendant and recognition by Defendant of alleged wrongdoing or mistreatment do not change the fact that he agreed to settle this matter without proceeding to trial. This is a consideration that all parties necessarily make in deciding whether to settle a case or continue with litigation. The terms Plaintiff now takes issue with go to the core purpose of a settlement agreement. Special allowance for Plaintiff to back out of the settlement agreement he voluntarily entered into is not supported by the facts and circumstances of this case or by case law. The settlement agreement is binding and enforceable. Therefore, the Court grants Defendant's Motion to Enforce Settlement. **IT IS SO ORDERED**.

_____
Meghan A. Adams, Judge